### Town of Dry Grove, Defendant in Error, v. Robert Otto, Plaintiff in Error.

### Gen. No. 8,622.

Opinion filed April 27, 1932.

BRACKEN, LIVINGSTON & MURPHY, for plaintiff in error.

WHITMORE & WHITMORE, for defendant in error.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

The Town of Dry Grove, McLean county, Illinois, defendant in error, in an action of assumpsit obtained a judgment in the circuit court against Robert Otto, plaintiff in error, in the sum of $500. A jury was waived and the issues submitted to the court for trial.

There is no dispute in regard to the facts. The suit is brought to recover $500 retained by plaintiff in.

error as commissions on certain moneys paid out by him as *ex officio* treasurer of certain road funds. Plaintiff in error was supervisor of the Town of Dry Grove and as such was also *ex officio* treasurer of the road and bridge funds of said town. By virtue of his office as such *ex officio* treasurer there came into his hands the sum of $50,000 from the sale of bonds for the purpose of building hard roads in said town, which he disbursed upon proper orders for that purpose, the moneys so received being designated by the statute as a permanent road fund. As such *ex officio* treasurer he was also custodian of the taxes regularly levied and collected by the town for road and bridge purposes, which are designated as a common road and bridge fund. As *ex officio* treasurer of the permanent road fund, under the statute passed in 1917, he was entitled to receive one per cent on the amount of moneys of said fund paid out by him which would be $500. In making his reports to the town of the receipt and disbursements of these two funds he deducted his said commission of $500, to which he was entitled as *ex officio* treasurer of the permanent road fund, from the moneys received as *ex officio* treasurer of the common road and bridge fund. In 1919 the legislature amended the Fees and Salaries Act in regard to the compensation of supervisors to which we shall hereinafter refer. It is claimed by defendant in error, (1) that the amendment to the Fees and Salaries Act repealed the commissions theretofore allowed to supervisors acting as *ex officio* treasurers, and (2) that even if this be not so, plaintiff in error should have retained his said commission out of the permanent road fund and not out of the common road fund.

The determination of the first proposition advanced by counsel for defendant in error requires a review of the laws as they existed before and subsequent to the adoption of the amendment of the Fees and Salaries Act of 1919.

Under the Fees and Salaries Act as it existed in 1917, a supervisor received the sum of $2.50 per day for the time actually and necessarily engaged in the discharge of his duties as a member of such board of supervisors, and mileage, five cents each way, for necessary travel, and no other allowance or emolument, directly or indirectly, for any purposes whatever. (Ch. 53, sec. 39, Hurd's Rev. St. 1917.) Section 36, however, of this same act also provided that a supervisor shall receive for his services $3 per day when attending to town business out of town, and $2.50 for town business in his town and further that a supervisor, when attending to his duties as an overseer of the poor, shall be regarded as a town officer and his compensation for services as such overseer shall be fixed by the town board of auditors and be paid out of the town fund. These two sections, if read literally, appear to be in conflict, but up to 1917, in so far as we have been able to discover, they had existed unchanged for 45 years and supervisors had received compensation unquestioned under both sections for that length of time.

In 1913 an act was passed and approved entitled "An Act to revise the law in relation to roads and bridges." By this Act all previous laws relating to roads and bridges were codified, revised and amended. This act is divided into articles and subdivisions. Paragraph (C), section 42, subdivision II, article VI (Session Laws 1913, p. 538), Cahill's St. ch. 121, ¶ 48, is as follows: "In counties under township organization the supervisor of each town shall be *ex officio* treasurer of the road and bridge fund." Section 52 provides that the treasurer of the road and bridge fund shall receive all moneys raised in the town for the support and maintenance of roads and bridges therein, and for road damages, etc., and that the supervisor before becoming entitled to act as treasurer, and within 10 days after his election, shall execute a bond

'in double the amount of the moneys likely to come into his hands as such treasurer, etc. Section 53 provides as follows: "The *ex officio* treasurer shall, in addition to the other compensation to which he is by law entitled, receive two per cent on all moneys paid out by him up to and including two thousand dollars and one per cent on all moneys paid out by him in excess of two thousand dollars, excepting such amounts as shall have been paid to his successor; also except all moneys paid out in payment of bonds or other borrowed money." Cahill's St. ch. 121, ¶ 59. This act was amended in 1919 but these two sections thereof were not changed.

Subdivision VIII of Article VI (Cahill's Rev. St. 1931, ch. 121) deals with the subject of hard roads and provides two methods for raising money to construct and maintain the same, the first by a special tax and the second by the issue and sale of bonds for that purpose. The road fund involved in the case at bar was created by the sale of bonds. Section 113 of this act provides that when any such fund is raised for hard roads, the supervisor, as treasurer *ex officio,* shall give an additional bond for the benefit of the town in double the amount which will probably come into his hands from such hard road fund. Section 114 provides: "The tax, when collected, shall be paid to said treasurer as fast as collected, except such rate per cent as shall be allowed for collecting the same, and said tax shall be known and kept as the permanent road fund. The treasurer shall be allowed one per cent on all of said fund that comes into his hands." Cahill's St. ch. 121, ¶ 123.

In 1919 (Session Laws of 1919, page 567) the legislature amended sections 36 and 39 of the Fees and Salaries Act. Section 36 thereof was amended so as to read as follows: "Supervisors and assistant supervisors when attending the sessions of the county board

of supervisors or engaged in the regular committee work of such board, shall receive such compensation and mileage as is prescribed in section 39 of this Act.

"Supervisors when attending to town business outside their towns shall receive three dollars ($3.00) per day and when attending to town business within their towns shall receive two dollars and fifty cents ($2.50) per day.

"Supervisors when attending to their duties as overseers of the poor in counties where the system of town support of paupers prevails shall receive three dollars ($3.00) per day for business transacted outside their towns and two dollars and fifty cents ($2.50) per day for business transacted within their towns."

"Supervisors when attending to their duties as overseers of the poor in counties where the county system of support of paupers prevails shall receive three dollars ($3.00) per day for business transacted outside their towns, and two dollars and fifty cents ($2.50) per day for business transacted within their towns, payable out of the county treasury."

Section 39 was amended as follows: "Supervisors and assistant supervisors when attending the sessions of the county board of supervisors or engaged in the regular committee work of such board shall receive for their services the sum of five dollars ($5.00) per day and five cents per mile for each mile necessarily traveled in going to or from the county seat or place of committee meeting, payable out of the county treasury.

"Supervisors and assistant supervisors shall receive, directly or indirectly, no other allowance or emolument." Cahill's St. ch. 53, ¶ 53.

Section 2 of this act provides as follows: "Section 130 of an Act entitled, 'An Act to revise the law in relation to township organization,' approved and in force March 4, 1874, as amended, is repealed." There

is no section 130 of the act mentioned as being repealed but undoubtedly said "section 130" refers to section 1 of Article XV of the Township Organization Act then in force (Hurd's Rev. Stat. 1917, Art. XV, sec. 1, p. 2927). This section is designated in said volume as paragraph 130 and refers to the same subject matter as is mentioned in the amendment to section 39 of the Act of 1919.

Referring now to the contention of counsel for defendant in error that plaintiff in error is precluded from any compensation for acting as treasurer *ex officio* by that provision of section 39 of the Act of 1919 which provides: "Supervisors and assistant supervisors shall receive, directly or indirectly, no other allowance or emolument," it is apparent that that provision applies only to the compensation of supervisors while engaged in regular committee work and in attending sessions of the board of supervisors. If given the effect contended for it would prevent supervisors from receiving any other compensation whatever for any other duties imposed upon them by law. That such was not the intention of the legislature is clearly shown by the fact that in this same Act of 1919 it is prescribed that supervisors and assistant supervisors shall receive certain compensation for attending their duties as overseers of the poor. The only act or part of an act specifically repealed by the Act of 1919 is said section 1 of Article XV of the Township Organization Act. When a statute specifically repeals certain other acts or parts of acts it will not be presumed that the legislature intended to repeal any act not mentioned among those specifically named.

It is further contended that if it should be held that the above amendment to the Fees and Salaries Act did not repeal the sections in the Roads and Bridges Act allowing commissions to the *ex officio* treasurer, yet the plaintiff in error is liable for the $500 retained by

him as commissions because he retained the same out of funds which belonged to the road and bridge fund and not out of the funds belonging to the permanent road fund, that these funds are separate and distinct and moneys in one fund cannot be appropriated to pay commissions or other claims pertaining to the other fund. Without question the Roads and Bridges Act makes a supervisor *ex officio* treasurer of the regular road and bridge fund consisting of the taxes levied and collected for ordinary road and bridge purposes. It is also evident that if a town votes in favor of constructing what are commonly known as hard roads and funds are provided therefor, either by a special tax levied for that particular purpose or by the issue and sale of bonds, such fund is a distinct and separate fund to be known as the permanent road fund. It must be conceded that the permanent road fund and the common road and bridge fund are separate and distinct funds, as the *ex officio* treasurer must give a separate bond covering each fund, and he also receives a different commission for handling each fund. There is no question but what plaintiff in error was entitled to his commission as *ex officio* treasurer of the permanent road fund and also that he was entitled to a commission as such treasurer of the common road and bridge fund as provided by section 53 of said act. It appears from the evidence that plaintiff in error took no commission as *ex officio* treasurer of the common road and bridge fund but retained out of said fund $500 as *ex officio* treasurer of the permanent road fund. It is also shown by the evidence that as such *ex officio* treasurer of the permanent road fund he kept said fund out at interest upon certificates of deposit until it was used and obtained for such interest a total amount of $1,132.34 of which defendant in error received the benefit. Plaintiff in error received $50,000 proceeds from the sale of bonds and $1,132.34 interest on said

proceeds making a total which he received and paid out as *ex officio* treasurer of the permanent road fund of $51,132.34 and that he was entitled to his commission of one per cent on this amount or $511.32 under section 114 of the Roads and Bridges Act. The evidence also shows that as *ex officio* treasurer of the common road and bridge fund he paid out $13,154.10 and that he was entitled to a commission on the latter sum under section 53 of said act, two per cent on $2,000 thereof and one per cent on the balance. It is unquestionably the law that public funds acquired by taxation or otherwise for one specific purpose cannot be paid out of a tax fund levied for another purpose. *People v. Chicago, T. H. & S. E. R. Co.*, 315 Ill. 589; *Chicago & Alton R. Co. v. People*, 205 Ill. 625; *People v. Louisville & N. R. Co.*, 300 Ill. 312; *People v. Chicago & E. I. R. Co.*, 300 Ill. 258.

Under the conceded facts and the pleadings in this case, however, we can see no way of reversing the judgment, inequitable as it may be. The judgment of the circuit court is affirmed.

*Affirmed.*